# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| ESPERANZA SANTOS, *et al.*, | |
| **Plaintiffs,** | |
| v. | CIVIL NO. 13-1537 (JAG) |
| AMERICA CRUISE FERRIES, INC., *et al.*, | |
| **Defendants.** | |

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court is a Motion for Summary Judgment filed by America Cruise Ferries, Inc. ("Defendant") on July 30, 2014. Docket No. 26. Plaintiffs Esperanza Santos, on her own behalf and on behalf of the conjugal partnership composed by her and Jose Santos, and with Sonia Santos as heirs of Jose Santos (collectively "Plaintiffs") duly opposed Defendant's Motion. Docket No. 29. Defendant and Plaintiffs, in turn, filed a Reply and a Surreply, respectively. Docket Nos. 32 and 34. Upon careful examination of the relevant facts, the applicable law, and the parties' arguments, Defendant's Motion for Summary Judgment is hereby DENIED in part and GRANTED in part.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

On April 8, 2012, Plaintiff Esperanza Santos and her husband, Jose Santos, made a reservation with Defendant for a round trip from the Dominican Republic to Puerto Rico. Docket No. 24. at 3. After boarding one of Defendant's vessels on August 9, 2012, Esperanza and Jose Santos arrived in Puerto Rico from the Dominican Republic. Id. On August 24, Esperanza and Jose Santos boarded Defendant's M/V Caribbean Fantasy, which was scheduled to depart Mayaguez, Puerto Rico and arrive the next morning in Santo Domingo, Dominican Republic. Id. at 2-3. Defendant allowed the passengers to board the vessel despite dangerous climatologic conditions as a result of Tropical Storm Isaac. Id. at 3. Due to the storm, the vessel failed to arrive in Santo Domingo by 7:00AM on August 25, as scheduled. Id.

On or around 11:30AM, Esperanza and Jose Santos were returning to their cabin after having breakfast. Id. at 4. As a result of the inclement weather, Jose Santos was thrown around and hit the back of his head. Id.  According to the official deck log of the vessel, Jose Santos's injury occurred when the vessel was far outside Puerto Rico's territorial waters. Docket No. 26, Ex. 1.[2] The injury resulted in profuse bleeding and a severe cranium-cerebral trauma. Docket No.

---

[1]  The facts discussed in this section are uncontested. Defendant accepts these facts for purposes of the Motion for Summary Judgment. Docket No. 26 at 3 n.2. The Court notes, however, that this is a particularly odd case in which the parties have completely failed to develop the summary judgment record. In fact, the record merely consists of an affidavit stating the vessel's location at the time of the injury and a copy of Jose Santos's death certificate.  See Docket Nos. 26, Ex. 1 & 29, Ex. 1.

[2]  Defendant's Statement of Uncontested Material Facts, as supported by the record, establishes that the location of the vessel at 10:58AM was 14.6 nautical miles south of the Dominican Republic and at 11:06AM, it was 14.1 nautical miles south of the Dominican Republic. Docket No. 26, Ex. 1. Interestingly enough, Defendant inexplicably fails to develop the summary judgment record to show either: 1) the reported time of the injury, namely, whether it was 10:58AM or 11:06AM; or 2) the vessel's location at 11:30AM, which is the time of the injury according to the Complaint. In any event, Defendant's omission is immaterial. While it is unclear whether the vessel was located in international waters or the territorial waters of the Dominican Republic at 11:30AM, it is both undisputed and evident that the injury occurred

24 at 4. Jose Santos was then taken to the nurses' station aboard the vessel, where he was cleaned and bandaged up. Id. The bandaging, however, was done so poorly that a pediatrician, who was a passenger on the ship, had to rebandage the wound.  Id. Since Defendant failed to request assistance for Jose Santos once the vessel arrived in Santo Domingo, Esperanza and Jose Santos had to drive to the neurological division of a clinic called *El Centro de Obstetricia y Ginecologia*. Id. at 5.[3] Jose Santos was admitted at the clinic and remained hospitalized until September 7, 2012. Id. A CT Scan taken at the clinic showed general brain atrophy and a frontal hematoma with light mass effect. Id. Moreover, during his hospitalization at the clinic, Jose Santos suffered from an asthma attack, dizziness, and periodic unconsciousness which, in turn, worsened his neurological condition. Id.

When discharged from the clinic, Jose Santos remained in a poor state of health and was unable to walk. Id. On September 16, 2012, Jose Santos and his wife traveled to New Jersey to continue the medical treatment. Id. He was quickly hospitalized in Saint Joseph's Hospital and remained there until September 21. Id. at 6. Upon discharge, he commenced his rehabilitation therapy at the Kessler Rehabilitation Center, where he remained until October 17. Id. He was then transferred to the Barnert Subacute Rehabilitation Center and remained there until November 17. Id.

---

when the vessel was on the high seas —i.e., outside Puerto Rico's territorial waters. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 441 n.8 (1989) ("On December 28, 1988, the President announced that the United States would henceforth recognize a territorial sea of 12 nautical miles."); see also United States v. McPhee, 336 F.3d 1269, 1273 (11th Cir. 2003) ("The United States generally recognizes the territorial seas of foreign nations up to twelve nautical miles adjacent to recognized foreign coasts.") (citations omitted).

[3] Center of Gynecology and Obstetrics

On June 9, 2013, Jose Santos, Esperanza Santos, and their conjugal partnership filed the instant personal injury action against Defendant alleging negligence. Docket No. 1. Jose Santos asked for the sum of five million dollars ($5,000,000) claiming that he was bedridden and that he was forced to undergo outpatient therapy three times per week. Docket No. 1 at 5; Docket No. 24 at 6. Esperanza Santos also asked for damages in the sum of one million dollars ($1,000,000) for the suffering that she endured by seeing her husband bedridden and for all her time and efforts in assisting Jose Santos. Docket No. 1 at 5; Docket No. 24 at 7.

On June 2, 2014, Jose Santos passed away in New Jersey. Docket Nos. 17; Docket No. 29, Ex. 1. In light of Jose Santos's unfortunate passing, the complaint was amended and Jose Santos was substituted by both his wife, Esperanza Santos, and his daughter, Sonia Santos. Docket Nos. 20 & 24. The Amended Complaint filed by Plaintiffs —Esperanza Santos, on her own behalf and on behalf of the conjugal partnership composed by her and Jose Santos, and with Sonia Santos as heirs of Jose Santos— restated the negligence allegations of the first complaint, while adding that Jose Santos's damages are to be received by his heirs, Esperanza and Sonia Santos. Docket No. 24 at 4-6.[4]

Plaintiffs are citizens of the State of New Jersey and Defendant is a corporation incorporated and with its principal place of business in Puerto Rico. Id. at 1. The Amended Complaint, thus, avers diversity jurisdiction over Plaintiffs' negligence claims pursuant to 28 U.S.C. § 1332. Id. at 2. Moreover, Plaintiffs assert that this personal injury action arises under

---

[4] Plaintiffs filed an informative motion indicating that Esperanza and Sonia Santos were the heirs of Jose Santos and, thus, are entitled to recovery of his damages in the instant case. Docket No. 20. Nonetheless, this Court notes that Plaintiffs failed to include a copy of Jose Santos's will or a copy of the determination of intestate succession by a probate court.

Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141. Docket No. 27 at 16.[5] It follows that Plaintiffs rely exclusively on this court's diversity jurisdiction and do not designate their negligence claim as an admiralty or maritime one under Fed. R. Civ. P. 9(h).

On July 30, 2014, Defendant filed its Motion for Summary Judgment against Plaintiffs. Docket No. 26. In the Motion, Defendant argues, *inter alia*, that the Death on the High Seas Act, 46 U.S.C. § 30302 ("DOHSA"), applies to Plaintiffs' claims. Id. at 10. According to Defendant, DOHSA's applicability entails that the Complaint at bar must be dismissed for lack of subject matter jurisdiction and lack of standing. Id. at 17-20. In the alternative, Defendant argues that either DOHSA or general maritime law requires the dismissal of Plaintiffs' claim for Jose Santos's damages, as well as Esperanza Santos's claim for damages concerning her own pain and suffering. Id. at 23; Docket No. 32 at 12. Plaintiffs, on the other hand, argue that DOHSA does not apply and that they are entitled to both pecuniary and non-pecuniary damages because this is a personal injury action arising under Puerto Rico state law. Docket No. 29 at 6-7, 18-19. Plaintiffs also contend that, in the event that general maritime law applies, Esperanza Santos is entitled to damages for Defendant's alleged negligent infliction of emotional distress. Docket No. 34 at 10-11.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[5] Aside from claiming that this Court has diversity jurisdiction over Plaintiffs' claims, the Amended Complaint does not state what the applicable law is in the instant case —namely, under what law does the cause of action arise. Instead, it is the Joint Pretrial Memorandum filed on August 4, 2014, which finally specifies that the negligence claim in this case arises under Article 1802 of the Puerto Rico Civil Code. Docket No. 27.

genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see Fed. R. Civ. P. 56(a). "An issue is genuine if it may reasonably be resolved in favor of either party at trial, and material if it possess[es] the capacity to sway the outcome of the litigation under the applicable law." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the non-movant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The non-movant may establish that a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations,

improbable inferences, and unsupported speculation." <u>Forestier Fradera v. Mun. of Mayaguez</u>, 440 F.3d 17, 21 (1st Cir. 2006) (quoting <u>Benoit v. Technical Mfg. Corp.</u>, 331 F.3d 166, 173 (1st Cir. 2003)).

## ANALYSIS

### I.   Admiralty Jurisdiction

While Plaintiffs rely exclusively on this Court's diversity jurisdiction to bring forth their tort claims, this Court must still determine whether the tort alleged is "maritime" in nature and, thus, within this Court's admiralty jurisdiction. This determination is important for two reasons. First, "[w]ith admiralty jurisdiction comes the application of substantive admiralty law." <u>E. River S.S. Corp. v. Transamerica Delaval Inc.</u>, 476 U.S. 858, 864 (1986) (citing <u>Executive Jet Aviation, Inc. v. City of Cleveland</u>, 409 U.S 249, 255 (1972)). Second, a plaintiff cannot draft a complaint in a manner that divests a federal district court of jurisdiction that unquestionably exists. <u>See</u> <u>Carey v. Bahama Cruise Lines</u>, 864 F.2d 201, 206 (1st Cir. 1988) ("The mere fact that the plaintiffs invoked the diversity of citizenship jurisdiction of the district court does not preclude the application of maritime law."); <u>Friedman v. Cunard Line Ltd.</u>, 996 F. Supp. 303, 305 (S.D.N.Y. 1998) ("Where a tort falls within admiralty jurisdiction, the general maritime law applies, even if the plaintiff's complaint pleaded diversity of citizenship as the sole basis for the subject matter jurisdiction.").

Admiralty jurisdiction requires for the alleged tort to occur on navigable waters ("traditional locality requirement") and to bear a significant relationship to traditional maritime activity (""maritime nexus requirement"). <u>See</u> <u>Butler v. Am. Trawler Co.</u>, 887 F.2d 20, 21 (1st Cir. 1989) (citations omitted). In determining whether a tort occurred on navigable waters, courts

must look at "where the negligence 'takes effect,' not where the negligent act occurred." Id.; see also Drake v. Raymark Industries, Inc., 772 F.2d 1007, 1015 (1st Cir. 1985) (finding that the locality test was satisfied when injury "occur[s] or take[s] effect on navigable waters"). It is undisputed that Jose Santos's injury occurred aboard a vessel on either the high seas or the territorial waters of the Dominican Republic, both of which certainly qualify as navigable waters. See The Daniel Ball, 77 U.S. 557, 563 (1870) (defining "navigable waters" as bodies of water that "form in their ordinary conditions by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary mode in which such commerce is conducted by water"); see also Cove Tankers Corp. v. United Ship Repair, Inc., 528 F. Supp. 101 (S.D.N.Y. 1981) (stating that "navigable waters" include both the territorial waters of the United States and the high seas).

As to the maritime nexus requirement, it is clear that an injury aboard a vessel engaged in the commercial transportation of passengers, such as this one, bears a significant relation to traditional maritime activities and has an effect on maritime commerce. See Carey, 864 F.2d at 207 (finding that a passenger's injury aboard a cruise ship satisfies the maritime nexus requirement); see also Olivelli v. Sappo Corp., 225 F. Supp. 2d 109, 115 (D.P.R. 2002) (finding that the transportation of divers on a vessel qualifies as a traditional maritime activity). Therefore, this Court finds that both requirements are met and, thus, admiralty jurisdiction exists.[6]

---

[6] In their Surreply, Plaintiffs seem to recognize that the Court has admiralty jurisdiction in the instant case by stating that general maritime law is the applicable law governing liability and that state law is available to supplement their damages. Docket No. 34 at 5-6, 10.

II.      Applicable Substantive Law

Since it is clear that Plaintiffs' tort claims are maritime in nature, it follows that "[a]bsent a relevant statute, the general maritime law, as developed by the judiciary, applies." E. River S.S. Corp., 476 U.S. at 864 (citations omitted). It is also true that the existence of admiralty jurisdiction does not result in the automatic displacement of state law. See Yamaha Motor Corp, U.S.A. v. Calhoun, 516 U.S. 199, 206 (1996) (holding that state law remains applicable in wrongful death and survival actions arising from accidents to nonseamen in territorial waters). With this in mind, the Court proceeds to address the parties' arguments and determine what is the applicable law in the instant case.

A.  Death on the High Seas Act

DOHSA provides a cause of action for the death of any person "caused by wrongful act, neglect or default occurring on the high seas beyond 3 nautical miles from the shore of the United States . . . ." 46 U.S.C. § 30302. The statute covers any fatal, high seas injury, even if the negligence was entirely land-based and the ensuing death took place on shore at a later time. See 1 Thomas J. Schoenbaum, Admiralty and Maritime Law 663 (5th ed., 2011) (citing Motts v. M/V Green Wave, 210 F.3d 565 (5th Cir. 2000)); see also Bergen v. F/V St. Patrick, 816 F.2d 1345, 1348 (9th Cir. 1987) ("[DOHSA] has been held to refer to the site of an accident on the high seas, not to where death actually occurs or where the wrongful act causing the accident may have originated."). Moreover, the statute's reference to the "high seas" means that DOHSA applies to any fatal injury or death that occurs in international waters or the territorial waters of a foreign nation. See Mancuso v. Kimex, Inc., 484 F. Supp. 453, 455 (S.D. Fla. 1980) (quoting Cormier v. Williams/Sedco/Horn Constructors, 460 F. Supp. 1010, 1011 (E.D. La. 1978)) (finding that

Congress enacted DOHSA to "cover all deaths in navigable waters 'outside the reach of state law' . . ., even if within another country's territorial waters").[7]

Furthermore, the proper party to bring a claim under DOHSA is the decedent's "personal representative" for the "exclusive benefit of the decedent's spouse, parent, child, or dependent relative." 46 U.S.C. § 30302. Courts have held that a "personal representative" under the statute "is by definition a court-appointed executor or administrator of an estate, not merely an heir." Credle v. United States, 904 F. Supp. 2d 527, 528 (D. Md. 2012) (citing various cases holding that plaintiffs under DOHSA must show that they are duly appointed executors or administrators of the decedent's estate).  Since DOHSA clearly provides that only a personal representative of the decedent may bring a civil action under the statute, it follows that beneficiaries that are not duly appointed representatives of the estate do not have standing to file a DOHSA wrongful death suit. Id. (citing Alcabasa v. Korean Air Lines Co., Ltd., 62 F.3d 404, 407 (D.C. Cir. 1995); Futch v. Midland Enters., Inc., 471 F.2d 1195, 1196 (5th Cir. 1973)). Finally, when applicable, DOHSA provides the exclusive remedy and may not be supplemented by general maritime law or state law. See, e.g., Dooley v. Korean Air Lines Co., Ltd., 524 U.S. 116 (1998) (holding that DOHSA preempts survival actions under general maritime law); Offshore

---

[7] Courts are split as to the meaning of "high seas" for purposes of DOHSA's applicability. Compare Chute v. United States, 466 F. Supp. 61, 65 (D. Mass. 1978) (holding that DOHSA applies to all fatal injuries or deaths occurring beyond three nautical miles of any U.S. shore) with Blome v. Aerospatiale Helicopter Corp., 924 F. Supp. 805, 814 (S.D. Texas 1996) (relying on President Reagan's Proclamation No. 5928, 54 Fed. Reg. 777 (1988) to hold that DOHSA only applies to those fatal injuries or deaths occurring beyond twelve nautical miles of any U.S. shore). This split, however, is irrelevant for purposes of this case because it is undisputed that Jose Santos's injury occurred outside of Puerto Rico's territorial waters. See Docket No. 26, Ex. 1.

Logistics, Inc. v. Tallentire, 477 U.S. 207 (1986) (holding that DOHSA preempts state wrongful death statutes).

Defendant first argues that this Court lacks subject matter jurisdiction in the instant case because Plaintiffs failed to allege in the Amended Complaint that their claims are governed by DOHSA. Docket No. 26 at 17-19. Defendant relies exclusively on Delgado v. Reef Resort Ltd., 364 F.3d 642, 646 (5th Cir. 2004) for the proposition that Plaintiffs are required to identify DOHSA as the applicable law for this Court to have subject matter jurisdiction. Docket No. 26 at 10, 19. Such an assertion is unfounded for various reasons.

First, Defendant's argument presumes that DOHSA applies in this case. Plaintiffs and Defendant, however, disagree as to relationship between Jose Santos's injury and his death. At this stage, Defendant failed to show that there are no genuine issues of material fact precluding the entry of summary judgment. Defendant even failed to provide any concrete evidence supporting its claim that the injury was a cause of Jose Santos's death.[8] Moreover, Jose Santos's death certificate submitted by Plaintiffs is the only piece of evidence relevant to this issue. The death certificate identifies several cardiovascular diseases and complications as the causes of Jose Santos's death. Docket No. 29, Ex. 1. The certificate also describes his manner of death as "natural." Id. This information, however, is not sufficient for the Court to conclude that the injury did not contribute in any way to Jose Santos's death. See Garofalo v. Princess Cruises,

---

[8] In its Reply, Defendant cites the testimony and report of Plaintiffs' medical expert to show that the injury in fact worsened Jose Santos's health conditions. Docket No. 32 at 3-4. Defendant, however, did not provide the Court with a copy of the report. Therefore, in the absence of a developed summary judgment record, the Court will disregard Defendant's references to the medical expert's report. Similarly, Defendant's assertion that Plaintiffs previously argued that Jose Santos's death was related to the high seas injury is completely unfounded. The Court notes that the allegations in the Amended Complaint at no point establish a causal relationship between the injury and the death.

Inc., 2001 A.M.C. 623, 624 (Cal. App. 2000) (stating that "when a high seas injury is a cause, but not the sole cause, of the decedent's death, DOHSA provides the exclusive remedy as to the high seas tortfeasor"). It is perfectly plausible that the injury aggravated Jose Santos's health and cardiovascular conditions in such a way that resulted in his eventual death, thus rendering DOHSA applicable. See id. (applying DOHSA where plaintiff died from a medical condition allegedly aggravated by smoke inhalation that occurred eighteen months prior to his passing during a fire aboard defendant's vessel). Therefore, since the parties disagree as to whether the injury is a cause of Jose Santos's death, this Court recognizes that "there is a question of fact that must be resolved before a determination of the applicable law can be made." Blome, 924 F. Supp. at 814 (denying summary judgment because the parties disagreed as to where the injury took place).

Second, Defendant misinterprets the Fifth Circuit's holding in Delgado. Defendant claims that Delgado stands for the proposition that failure to invoke DOHSA as the applicable law requires the automatic dismissal of the Complaint at bar for lack of subject matter jurisdiction. Docket No. 26 at 19; Docket No. 32 at 5-6. The Court does not agree. The Fifth Circuit held in Delgado that the scuba diving accident in that case did not result from a maritime tort and, thus, did not trigger the court's admiralty jurisdiction. 364 F.3d at 645-646. With respect to DOHSA, the district court did not have a chance to determine if the statute could serve as a basis for admiralty jurisdiction because this argument was only raised on appeal. Id. at 646. As a result, the Fifth Circuit held that the plaintiff forfeited this argument when she failed to invoke DOHSA below. Id. Since the applicability of DOHSA was an issue discussed for the first time on appeal, Delgado merely stands for the proposition that the district court did not

commit plain error when it failed to sustain jurisdiction on the basis of a forfeited argument. Id. This Court does not read Delgado —a case that is not binding on the courts of this district— to require the automatic dismissal of a complaint where there is a maritime tort and admiralty jurisdiction exists. In the same way that a "[p]laintiffs' pleading cannot control the question of subject matter jurisdiction," allowing Defendant to divest this Court of jurisdiction that unquestionably exists is simply untenable. Friedman, 996 F. Supp. at 305

Defendant, however, is correct in pointing out that Plaintiffs' status as heirs of Jose Santos, while sufficient to be considered beneficiaries for purposes of DOHSA, is simply not enough to be considered personal representatives of the decedent. If this Court eventually concludes that DOHSA provides the exclusive remedy in the instant case, it would follow that, absent a court appointment, Plaintiffs lack standing to bring their claims under DOHSA. Credle, 904 F. Supp. at 528 (finding that a "personal representative" under the statute "is by definition a court-appointed executor or administrator of an estate, not merely an heir").

In the present case, Plaintiffs have failed to provide any evidence that they are duly appointed personal representatives of Jose Santos's estate. This Court, however, will allow Plaintiffs Esperanza and/or Sonia Santos to obtain either the appointment of an administrator or authorization by a New Jersey Probate Court to pursue these claims on behalf of Jose Santos. See, e.g., Complaint of Cosmopolitan Shipping Co., S. A., 453 F. Supp. 265, 266-67 (S.D.N.Y. 1978) (allowing claimants to "obtain some kind of authorization from an Italian court to pursue these actions on behalf of the decedent as his personal representative"); Fornaris v. American Surety Co. of New York, 183 F. Supp. 339, 340-341 (D.P.R. 1960) (allowing a surviving widow and her children to obtain the appointment of an administrator to maintain their suit under

DOHSA and amend the complaint without having the effect of commencing a new suit). The Court finds that either the appointment of an administrator or an authorization to proceed as personal representatives would be acceptable in the instant case because the "change would be in form rather than substance, it would set up no different state of facts as the ground of action, and it would relate back to the commencement of the suit." Fornaris, 183 F. Supp. at 341 (citing Missouri, Kansas & Texas Railway Co. v. Wulf, 226 U.S. 570 (1913)).

To recapitulate, since there is an important question of fact that must be resolved — whether Jose Santos's high seas injury was a cause of his death— Defendant's Motion for Summary Judgment is hereby DENIED.  Plaintiffs are granted a period of 90 days from the date of this Opinion and Order to either amend the Complaint to add a court-appointed administrator as a claimant or obtain an authorization from the New Jersey Probate Court to proceed as personal representatives in the instant case. In the event that Plaintiffs fail to act accordingly within the term granted and a determination is eventually made that DOHSA provides the exclusive remedy in this case, the Complaint at bar will be dismissed for lack of standing.[9]

### B.   General Maritime Law and State Law

Since it is unclear that DOHSA governs Plaintiffs' claims, we are left with determining the applicability of general maritime law and its impact on the instant case. See E. River S.S. Corp., 476 U.S. at 864 ("Absent a relevant statute, the general maritime law, as developed by the

---

[9] Under DOHSA, a beneficiary's recovery is limited to the following pecuniary damages: (1) loss of financial support and contributions; (2) loss of inheritance; (3) loss of household services performed by the decedent; (4) loss of nurture, guidance, and instruction; (5) funeral expenses paid by the decedent's dependents. See Schoenbaum, supra at 670-671 (citations omitted).

judiciary, applies.") (citations omitted); <u>see also</u> <u>Greenly v. Mariner Mgm't Group</u>, 192 F.3d 22 (1st Cir. 1999) (holding that general maritime law applies in admiralty cases, even if brought under the court's diversity jurisdiction). Federal admiralty courts have developed an extensive body of maritime tort principles and remedies that apply in the absence of congressional action. <u>See</u> <u>E. River S.S. Corp.</u>, 476 U.S. at 864-865 (citations omitted) ("Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules."); <u>Barbe v. Drummond</u>, 507 F. 2d 794, 800 (1st Cir. 1974) (recognizing a federal survival provision rooted in general maritime law).  Courts have also allowed recovery under relevant state statutes whenever statutory or general maritime law does not preclude such recovery. <u>See, e.g.</u>, <u>Calhoun</u>, 516 U.S. at 206 (holding that remedies of state wrongful death and survival statutes are available for fatal accidents of nonseamen in territorial waters); <u>Just v. Chambers</u>, 312 U.S. 383, 391-392 (1941) (holding that state survival statutes are available in cases arising out of accidents in territorial waters); <u>Western Fuel Co. v. Garcia</u>, 257 U.S. 233, 242 (1921) (holding that California's wrongful-death statute governed a suit brought by a widow of a maritime worker killed in California's territorial waters).

Prior to the enactment of DOHSA in 1920, it was well-established that maritime law provided no remedies to the survivors of persons killed on the high seas or on navigable waters. <u>See</u> <u>The Harrisburg</u>, 119 U.S. 199, 204 (1886) (holding that general maritime law did not afford recovery "for an injury which results in death"). As a result, "[f]ederal admiralty courts tempered the harshness of <u>The Harrisburg</u>'s rule by allowing recovery under state wrongful-death statutes." <u>Calhoun</u>, 516 U.S. at 206-207 (citing <u>The Hamilton</u>, 207 U.S. 398 (1907); <u>The City of Norwalk</u>, 55 F. 98 (S.D.N.Y. 1893)). Further mitigation of this harsh rule came in the form of

Congress's enactment of DOHSA, which provides the exclusive remedy for wrongful deaths occurring on the high seas, and the Jones Act, 46 U.S.C. App. § 688 *et seq.*, which allows recovery for wrongful deaths of seamen killed in the course of their employment either on the high seas or in territorial waters.

Furthermore, the Supreme Court in Moragne v. States Marine Lines, Inc., 398 U.S. 375 (1975) moved away from its prior ruling in The Harrisburg to afford a wrongful death remedy to the survivors of a longshoreman who had died in state territorial waters. Id. at 380. In essence, Moragne actions have been interpreted to act "(1) as a supplemental remedy for unseaworthiness regarding the wrongful death of seamen and (2) as a remedy for representatives of passengers and other persons in ships and aircraft who are killed in non-DOHSA admiralty jurisdiction," that is, in territorial waters. Schoenbaum, supra at 674 (citing De Centeno v. Gulf Fleet Crews, Inc., 798 F.2d 138 (5th Cir. 1986); King v. Universal Electric Constr., 799 F.2d 1073 (5th Cir. 1986)).

Following Moragne, the courts of appeal, including the First Circuit, crafted a federal maritime survival action for a decedent's pre-death pain and. See, e.g., Barbe, 507 F.2d at 709-800 (relying on Moragne to recognize a federal maritime survival action to supplement the damages recoverable under DOHSA); Spiller v. Thomas M. Lowe, Jr. & Associates, Inc., 466 F.2d 903 (8th Cir. 1972) (recognizing a federal survival provision rooted in general maritime law since there is no survival provision under DOHSA). The Supreme Court, however, rejected these decisions in Dooley v. Korean Air Lines Co., Ltd. by holding that "because Congress [in enacting DOHSA] has chosen not to authorize a survival action for a decedent's pre-death pain and suffering, there can be no general maritime survival action for such damages." 524 U.S. at 124. The Supreme

Court has also held that state remedies remain applicable in wrongful-death and survival actions arising from fatal injuries to nonseamen in territorial waters. <u>See</u> <u>Calhoun</u>, 516 U.S. at 206. This is true because neither DOHSA nor the federal maritime wrongful death action recognized in <u>Moragne</u> preempts the application of state statutes in these circumstances. <u>Id.</u> at 216.

In light of this decisional and statutory framework, the governing law can be summarized as follows: (1) passengers may bring tort claims under general maritime law for their high seas injuries; (2) DOHSA provides the exclusive remedy for fatal injuries on the high seas and cannot be supplemented by state law or a general maritime survival action; (3) <u>Moragne</u> actions are available for fatal injuries in territorial waters; (4) state statutes are available for accidents in territorial waters if recovery is consistent with maritime laws and policies. Since it is unclear that DOHSA applies and it is undisputed that Jose Santos's injury occurred on the high seas and that he passed away at a later time, it follows that Plaintiffs' right to recovery is quite limited. In order for Plaintiffs to recover for Jose Santos's damages and Esperanza Santos's non-pecuniary damages, this Court would have to recognize either that general maritime law provides a survival action or that Article 1802 of the Puerto Rico Civil Code applies to high seas injuries.[10] The Court refuses to recognize either one.

1.   **Survival Actions under General Maritime Law**

In <u>Barbe</u>, the First Circuit held that "there is a federal maritime survival action, created by decisional law, for pain and suffering prior to death." 507 F.2d at 709. In reaching this

---

[10] According to the Complaint, Plaintiffs' claims for survival and non-pecuniary damages may be classified into the following two categories: (1) Jose Santos's medical expenses and his pre-death pain and suffering; and (2) Esperanza Santos's pain and suffering and her loss of society and consortium damages. Docket No. 24 at 6-7.

decision, the First Circuit noted that since Congress failed to place a survival provision in DOHSA, the statute's wrongful-death remedies do not preempt the recovery for survival damages. Id. at 709-800.[11] The Supreme Court, however, explicitly rejected this proposition when it held in Dooley that there is no general maritime survival action for a decedent's pre-death pain and suffering in a case of a death on the high seas. 524 U.S. at 124. The Supreme Court found that Congress's deliberate choice not to authorize a survival action for these damages meant that a federal maritime survival action could not be relied upon to supplement DOHSA claims. Id. Since Dooley rejected a fundamental aspect of the First Circuit's analysis, this Court finds that Plaintiffs may not rely on the federal maritime survival action crafted in Barbe.

It is true that Dooley did not specifically foreclose the possibility of crafting a general maritime survival action allowing recovery in non-DOHSA cases. 524 U.S. at 124 (noting that since DOHSA provides the exclusive remedy for deaths occurring on the high seas, it was unnecessary to determine "whether general maritime law *ever* provides a survival action") (emphasis in original). This Court, however, does not read Barbe to fashion such a remedy. The Court notes that Barbe sought to expand the remedies available to survivors in DOHSA cases by awarding damages for a decedent's pre-death pain and suffering. 507 F.2d at 709-800. In doing so, the First Circuit did not consider the availability of a survival cause of action under general

---

[11] While a "wrongful death action is to recover damages to beneficiaries resulting from decedent's death," a survival action is "to recover damages the decedent could have recovered but for his death." Azzopardi v. Ocean Drilling & Exploration Co., 742 F.2d 890, 893 (5th Cir. 1984).

maritime law in non-DOHSA cases, specifically where a tort victim died due to reasons completely unrelated to the high seas injury.

In any event, this Court finds that decisional law and policy considerations counsel us against recognizing a federal survival action rooted in general maritime law. The Court reaches this conclusion for various reasons. First, it is clear that DOHSA only allows recovery for certain pecuniary damages resulting from the decedent's death. 46 U.S.C. § 30303 ("The recovery in an action under [DOHSA] shall be a fair compensation for the pecuniary loss sustained by the individuals for whose benefit the action is brought."). Therefore, allowing survivors to recover for non-pecuniary damages arising from high seas injuries —such as loss of consortium, loss of society, and a decedent's pre-death pain and suffering— would amount to judicial circumvention of Congress's considered judgment when enacting DOHSA. See Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625 (1978) (holding that Moragne actions are unavailable if the death or fatal injury occurred on the high seas). This is because "[t]here is a basic difference between filling a gap left by Congress'[s] silence and rewriting rules that Congress has affirmatively and specifically enacted." Id. The direct effect of Higginbotham, thus, was to limit the use of general maritime law in high seas accidents.

Second, when developing maritime law and conferring new remedies, courts must be aware that "[a]dmiralty law is not created in a vacuum; legislation has always served as an important source of both common law and admiralty principles." Miles v. Apex Marine Corp., 498 U.S. 19, 24 (1990). In other words, "when there is no recognized claim under general maritime law . . . an admiralty court should look to legislative enactments governing closely related claims for policy guidance." Doyle v. Graske, 579 F.3d 898, 907 (8th Cir. 2009) (citing

<u>Miles</u>, 498 U.S. at 27); <u>see also</u> <u>Horsley v. Mobil Oil Corp.</u>, 15 F.3d 200, 202 (1st Cir. 1994) (stating that courts should determine "whether Congress has preempted all interpretive discretion on the part of the admiralty court"). In addition, courts developing maritime law should be wary of conferring remedies that might produce absurd results, while preserving "a system of law coextensive with, and operating uniformly in, the whole country." <u>Horsley</u>, 15 F.3d at 202 (citing <u>Moragne</u>, 398 U.S. at 402) (internal citations omitted).

The Supreme Court has clearly stated that, through the enactment of DOHSA in 1920, "Congress [spoke] directly to the question of recoverable damages on the high seas, and when it does speak directly to a situation, the courts are not free to supplement Congress'[s] answer so thoroughly that the Act becomes meaningless." <u>Miles</u>, 498 U.S. at 31 (quoting <u>Higginbotham</u>, 436 U.S. at 625) (internal citations omitted). Therefore, since Congress spoke directly to the question of recoverable damages on the high seas, it follows that non-pecuniary damages are simply not available in cases such as the instant one —namely, when it is unclear whether DOHSA applies and the tort victim is no longer a claimant in the case. In other words, Congress's specific intent of promoting uniformity on the high seas requires this Court to apply DOHSA analogously to deny recovery for Jose Santos's damages and for Esperanza Santos's non-pecuniary damages. <u>See, e.g.</u>, <u>Doyle</u>, 579 F.3d at 908 (citing <u>Chan v. Soc'y Expeditions, Inc.</u>, 39 F.3d 1398, 1408 (9th Cir. 1994); <u>Nichols v. Petroleum Helicopters, Inc.</u>, 17 F.3d 119, 122–23 (5th Cir.1994)) ("Given the value of uniformity recognized in <u>Miles</u>, . . . we agree with the Fifth and Ninth Circuits that general maritime law does not allow recovery of loss-of-consortium damages by the spouses of nonseafarers negligently injured beyond the territorial waters of the United States."); <u>In re Amtrak "Sunset Ltd." Train Crash in Bayou Canot, Ala. on Sept. 22, 1993</u>, 121 F.3d

1421, 1429 (11th Cir. 1997) (holding that personal injury claimants could not seek non-pecuniary damages under general maritime law for the injury of a nonseafarer on the high seas); Murray v. Anthony J. Bertucci Construction Corp., Inc., 958 F.2d 127, 132 (5th Cir. 1992) ("The Supreme Court's emphasis in Miles on the importance of uniformity in maritime death cases must apply equally to injury action.").

Third, this Court agrees with Defendant that policy and practical considerations support a conclusion that claims by heirs of a decedent who suffered a non-fatal high seas injury and subsequently died of unrelated causes should not be allowed to recover non-pecuniary damages. It would be absurd for the spouse of a non-seaman who is killed on the high seas to only receive certain pecuniary damages under DOHSA, and allow the spouse of a non-seaman who was merely injured on the high seas to recover both pecuniary and non-pecuniary damages. See Chan, 39 F.3d at 1408 (stating that allowing the recovery of non-pecuniary damages in a traditional tort action "would effectively reward a tortfeasor for killing, rather than merely injuring his victim"); see also Frango v. Royal Caribbean Cruises, Ltd., 891 So.2d 1208, 1211 (Fla. App. 2005) (finding Chan's reasoning persuasive to hold that general maritime law does not allow recovery of non-pecuniary damages in connection with the injury of non-seamen on the high seas.).

Moreover, allowing the recovery of non-pecuniary damages in this case would entail that Plaintiffs would be in a better position than the family members of injured seamen whose damages are limited by the Jones Act. This proposition is both unfounded and untenable since it contradicts maritime law's longstanding principle that there is "a special solicitude for the welfare of seamen and their families." Miles, 498 U.S. at 36. Additionally, the Court notes that

"[i]t would be anomalous to grant the families of passengers on board a cruise ship a form of damages which the law denies to the families of seamen on board the same ship at the same time and injured in the same accident . . . ." Friedman, 996 F. Supp. at 312; see also Doyle, 579 F.3d at 907 ("There is no reason to believe that Congress meant to place the spouses of injured seamen in a worse position than the spouses of non-seafarers.").

Given the overwhelming authority denying heirs to recover survival and non-pecuniary damages for accidents on the high seas, to conclude otherwise would be to ignore the importance and value of uniformity upon which our body of maritime law is predicated upon. See Horsley, 15 F.3d at 202 (1st Cir. 1994) (recognizing the importance of uniformity in developing the body of general maritime law). While it might be argued that the holding today produces an anomaly between the types of damages available for accidents in territorial waters vis-à-vis accidents on the high seas, it is a fact that this anomaly already exists in maritime law. Compare Sea-Land Servs., Inc. v. Gaudet, 414 U.S. 573, 594 (1974) (holding that loss of consortium damages are available in Moragne actions when a wrongful death occurs in territorial waters) with Higginbotham, 436 U.S. at 624 & n. 20 (holding that loss of consortium damages are not available for wrongful deaths occurring on the high seas since DOHSA provides the exclusive remedy in such cases). Therefore, the Court's decision to deny recovery for survival and non-pecuniary damages in this case best comports with the legislative policies enacted in DOHSA and the Jones Act and the Supreme Court's interpretation of maritime law and principles.

Civil No. 13-1537 (JAG)                                                                 23

### 2.  State Law

The same reasoning applies to recovery of such damages under Puerto Rico law. There is simply no authority for the proposition that state statutes remain applicable when the relevant injury takes place on the high seas. See Calhoun, 516 U.S. at 206 (limiting the applicability of state law to personal injuries occurring in territorial waters); see also Felarise v. Cheramie Marine, LLC, 2010 WL 375229 at *1 (E.D. La. Jan. 26, 2010) (relying on Calhoun to allow recovery under state law of non-pecuniary damages for a personal injury to a non-seafarer in territorial waters). This is perfectly logical considering that applying state law to injuries on the high seas would substantially undermine the need for uniformity in maritime law. See Friedman, 996 F. Supp. at 312 ("When one contemplates the size of the floating cities that operate as modern cruise vessels, it is easy to hypothesize at least one married couple from each of the fifty states of the Union embarking on the same cruise. If the vessel strands . . ., and one spouse or the other among all fifty couples suffers injury, the shipowner will face claims for nonpecuniary damages based upon the laws of each of the fifty states.").  Consequently, since Jose Santos's injury did not occur on territorial waters, Article 1802 of the Puerto Rico Civil Code is simply unavailable to Plaintiffs in the instant case.

In conclusion, the Court holds that any right of action for Jose Santos's damages expired when he died and that Esperanza Santos has no right to recover for non-pecuniary damages

related to her husband's injury and death. Instead, under general maritime law, Plaintiffs'

damages are limited to pecuniary damages suffered as a result of Jose Santos's injury.[12]

### 3.  Negligent Infliction of Emotional Distress

After acknowledging that "the applicable law to the instant [case] is federal maritime

law," Plaintiffs mention in their Surreply that they are entitled to damages for Defendant's

negligent infliction of emotional distress. Docket No. 34 at 10. Specifically, Plaintiffs contend

that Esperanza Santos witnessed her husband's injury aboard the vessel and, thus, is entitled to

recover such damages under general maritime law. Id. at 10-11.[13]

It is inappropriate, however, to raise a new legal claim in response to a motion for

summary judgment.  See McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger, 280 F.3d 26,

38 (1st Cir. 2002); see also Opals on Ice Lingerie v. Bodylines, Inc., 2002 WL 718850, at *4

---

[12] Under DOHSA, Plaintiffs' recovery is limited to the pecuniary damages that resulted from Jose Santos's death. See supra note 8. Under general maritime law, recovery is limited to the pecuniary damages that resulted from Jose Santos's injury, such as the loss of financial support and loss of services *prior to his death.*

[13] Plaintiffs correctly point out that some courts have recognized the negligent infliction of emotional distress as a cognizable claim under federal maritime law. See Chan, 39 F. 3d at 1398; Ortiz v. Zambrana, 809 F. Supp. 2d 1, 5-6 (D.P.R. 2011); Peemoller Sultan v. Pleasure Craft Contender, 139 F. Supp. 2d 230 (D.P.R. 2001). There are three standards governing liability for this type of claim: (1) the "physical injury or impact" test, which requires the plaintiff to experience a physical injury in addition to emotional distress; (2) the "zone of danger" standard, which requires the plaintiff to be at risk of physical injury while also witnessing the endangerment of another; and (3) the "bystander proximity" test, which requires the plaintiff to be physically close to the scene of the accident, to witness the incident, and to be a close relative of the victim. See Ortiz, 809 F. Supp. at 5. Plaintiffs primarily assume, without much discussion, that the last test governs liability in the instant case. Docket No. 34 at 10-11. Nonetheless, most courts addressing this issue, including two courts of this district, have held that the "zone of danger" standard, as opposed to the "bystander proximity" test, applies. See, e.g., Chan, 39 F.3d at 1409-1410; Nieto-Vincenty v. Valledor, 22 F. Supp. 3d 153, 160 (D.P.R. 2014); Peemoller, 139 F. Supp. 2d at 235; Williams v. Carnival Cruise Lines, Inc., 907 F. Supp. 403, 406 (S.D. Fla. 1995); Yballa v. Sea-Land Servs., Inc., 919 F. Supp. 1428, 1435-1436 (D. Haw. 1995). Without deciding which standard governs liability in this case, the Court notes that Plaintiffs failed to make any arguments as to the applicability of the other two tests.

(E.D.N.Y. Mar.5, 2002) ("Courts have consistently ruled that it is inappropriate to raise new claims for the first time in opposition to summary judgment").  In fact, "[f]airness dictates that the defendant[ ] be given a minimum degree of forewarning as to the underlying basis of the relief sought." Ocaso, S.A., Compania de Seguros y Reaseguros v. P.R. Mar. Shipping Auth., 915 F.Supp. 1244, 1253 (D.P.R. 1996). Accordingly, this Court denies Plaintiffs' untimely allegation for negligent infliction of emotional distress.

## III.    The Right to a Jury Trial

The last issue to consider is whether Plaintiffs have preserved their right to a jury trial in the instant case. Defendant argues that Plaintiffs are not entitled to a jury trial because either DOHSA or general maritime law governs this case and, thus, there is no independent basis for diversity jurisdiction. Docket No. 26 at 20. Plaintiffs, on the other hand, claim that this is a personal injury case, as opposed to a wrongful death case under DOHSA, and that they are entitled to preserve their right to a jury pursuant to the "saving to suitors" clause in 28 U.S.C. § 1333(1). Docket No. 29 at 10.

The "saving to suitors" clause provides in relevant part, "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).  The Seventh Amendment's right to jury trial is an obvious example of a remedy available to suitors under this clause. See Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438 (2001). While there is no right to a jury trial in admiralty cases, it is also true that the Seventh Amendment does not prohibit one in such cases. See Fitzgerald v. U.S. Lines Co., 374 U.S. 16, 20 (1963); see also Concordia Co. v. Panek, 115 F.3d 67, 69–73 (1st Cir.

1997). If an admiralty case has a second and independent basis for federal jurisdiction, a demand for a jury trial must be honored so long as the claimant has not made a Fed. R. Civ. P. 9(h) election to proceed in admiralty. Concordia Co., 115 F.3d at 70-71. Furthermore, "[i]f a party fails to identify the claim as one in admiralty, instead averring diversity jurisdiction, the right to a jury trial is preserved through the 'saving to suitors' clause." Muhs v. River Rats, Inc., 586 F. Supp. 2d 1364, 1371-72 (S.D. Ga. 2008) (citing Wilmington Trust v. U.S. Dist. Ct., 934 F.2d 1026, 1029–32 (9th Cir. 1991); Bacon v. Bunting, 534 F. Supp. 412, 415 (D. Md. 1982)).

In the instant case, Plaintiffs failed to make a Rule 9(h) election, invoked the Court's diversity jurisdiction, and made a timely demand for a jury trial. Docket No. 24. While Plaintiffs' tort claims are maritime in nature, the Court notes that there is a separate and independent basis for federal jurisdiction under the diversity statute, 28 U.S.C.   § 1332. See, e.g., Allen v. Matson Nav. Co., 255 F.2d 273 (9th Cir. 1958) (holding that a steamship passenger's maritime tort claims could be based upon diversity of citizenship with a jury trial by virtue of the "saving to suitors" clause); Blancq v. Hapaq-Lloyed A.G., 986 F. Supp. 376, 384 (E.D. La. 1997) (holding that because Plaintiff requested a trial by jury in his state court petition and did not make an affirmative designation to proceed in admiralty, his trial by jury was preserved upon removal pursuant to the diversity statute); Bacon, 534 F. Supp. 412 (holding that a passenger's spouse suit for her husband's injuries sustained in a fall on deck and for loss of society were entitled to jury trial under § 1332). Therefore, the Court will honor Plaintiffs' timely demand for a jury trial.

## CONCLUSION

For the reasons outlined above, Defendant's Motion for Summary Judgment is DENIED in part and GRANTED in part. It is denied because there is an important question of fact that

must be resolved before a determination of whether DOHSA applies can be made. Since it is still possible that DOHSA applies, the Court hereby grants Plaintiffs a period of 90 days from the date of this Opinion and Order to either amend the Complaint to add a court-appointed administrator as a claimant or obtain an authorization from the New Jersey Probate Court to proceed as personal representatives of Jose Santos.

Defendant's Motion is granted in part because Plaintiffs do not have a right to recover, under DOHSA or general maritime law, for Jose Santos's damages and for Esperanza Santos's non-pecuniary damages. In other words, recovery is limited to those pecuniary damages that Plaintiffs suffered as a result of Jose Santos's injury (if DOHSA does not apply) or death (if DOHSA applies).

Finally, this Court holds that Plaintiffs have preserved their right to trial by jury pursuant to 28 U.S.C. § 1333(1).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 17th day of March, 2015.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge